IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A.; BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. RETIREMENT ACCOUNT FUND; BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. PENSION FUND; BOARD OF TRUSTEES of the PLUMBERS LOCAL UNION NO. 93 U.A. HEALTH AND WELFARE FUND; BOARD OF TRUSTEES of the JOINT APPRENTICESHIP COMMITTEE FUND of the PLUMBING & HEATING INDUSTRY OF LAWK AND McHENRY COUNTIES; and the INDUSTRY ADVANCEMENT FUND, Plaintiffs, v. WATERWORKS, INC., Defendant. | No. 07 C 3009 |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Board of Trustees of the Plumbers Local Union No. 93 U.A.; Board of Trustees of the Plumbers Local Union No. 93 U.A. Retirement Account Fund; Board of Trustees of the Plumbers Local Union No. 93 Pension Fund; Board of Trustees of the Plumbers Local Union No. 93 U.A. Health and Welfare Fund; Board of Trustees of the Joint Apprenticeship Committee Fund of the Plumbing and Heating Industry of Lake and McHenry Counties and the Industry Advancement Fund ("collectively plaintiffs") have brought this action to compel an audit of defendant Waterworks, Inc. ("Waterworks") under section

205 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 *et seq*. The parties have filed cross-motions for summary judgment. For the following reasons, the motions are denied.

I.

Defendant claims to be a small, family owned business specializing in the installation of sprinkler systems in residential and commercial properties. Sometime in the fall of 2004, the president of Waterworks, Roger Garbacz met with Lynn Karner, a Business Representative for the Plumbers Local Union No. 93 ("Union"). What took place at this meeting is in dispute by the parties. According to Karner's affidavit:

> [o]n or about the Fall of 2004, I met with Mr. Garbacz and again discussed the possibility of Water[w]orks becoming a signatory to the Local 93 Collective Bargaining Agreement.
> During the meeting . . . , Mr. Barbacz stated that he would like to see his son enrolled in the Local 93 Apprenticeship Program. At no time during this meeting did I ever agree, on behalf of the Union, that Water[w]orks would not have to become signatory to the Local 93 Collective Bargaining Agreement in exchange for Dustin Garbacz, or any other Water[w]orks employee, being accepted into the Local Union No. 93 Apprenticeship Program.
> . . .
> The fact that Water[w]orks never returned a signed Subscription Agreement to the Local Union No. 93 office is a clerical oversight.

(Pl. Br. Ex. 2 at ¶¶ 4-5, 10.) Meanwhile, Roger Garbacz attests that

> In the fall of 2004 . . . . [Karner] and I agreed that I would accept one plumber from Local 93, and that I would

> pay that single new plumber and Terry England (a long-time Waterworks' employee) the Union rate, as well as the monthly benefits. In return, [Karner] agreed to accept my son, Dustin Garbacz, to the Union apprenticeship plumbing program, and [Karner] said that Waterworks, Inc. would not be bound by anything else, including the [collective bargaining agreement]. [Karner] told me I did not have to sign anything, including the monthly Dues Reports, because he and I had agreed that Waterworks, Inc. would[sic] not going to be bound by any terms of any type of Collective Bargaining Agreements.

(Def. Br. Ex. 1 at ¶ 5.)

The parties do not dispute that after the fall 2004 meeting Dustin Garbacz began the Local Union No. 93 Apprenticeship Program; Terry England, a Waterworks employee, also began the Local Union No. 93 Apprenticeship Program; and Lance Huffy, a Union member referred to Roger Garbacz, began working for Waterworks in March 2005. Defendant also submitted a total of fifteen pre-printed Contribution Reports, which had been provided by the Union, on behalf of Huffy and England over a fourteen month period. For the months in which Huffy or England performed no hours of work, Waterworks reported that information to the Local 93 Fund Office. Also, the amounts due in the Contribution Reports were consistent with the terms of the Union collective bargaining agreement ("CBA") and Trust Agreements. In pertinent part, the Contribution Reports state as follows:

> To the employer: Listed below are the names and Social Security numbers of your employees covered by your collective bargaining agreement with the local union . . . . If you have employees covered by the collective bargaining agreement who are not listed below, please add their names.

> . . .
> Employer's Warranty and Acceptance
> The undersigned employer hereby warrants that this report accurately states all hours worked by all Local 93 plumbers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Plumbing and Heating Contractors Association of Lake and McHenry Counties and the Lake County and McHenry County Journeymen Plumbers' Local Union 93 of the United Association. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing U.A. 93 Plumbers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its U.A. 93 plumbers.

Defendant never signed any of the "Warranty and Acceptance" clauses in any of the fifteen Contribution Reports and the Union never rejected them. In March 2007, along with certain Contribution Reports, defendant also sent a letter requesting "the liquid damage fee to be waived," which acknowledged the liquidated damages provision for the untimely payment of benefit contributions in the Trust Agreement.

Plaintiffs contend this suit arose as a result of defendant's refusal to submit to an audit by plaintiffs. Defendant contends that on May 26, 2006 (four days prior to the filing of the complaint) he had a meeting with Karner and Richard Flament, of the Union, and that they advised him that

> not only was Dustin not allowed to be in the apprenticeship program, but that I was not allowed to have any Union plumbers unless I was able to have them work 12 months every year. I once again explained to them that Waterworks is a seasonal business, and that we do not install anything during the winter months. [Karner] then tossed their contract at me and said I now had to sign it, because if I didn't, he would sue me and

4

> it would be very expensive for me. I told them I would not sign their contract, and I would let my Union plumbers know that they could finish out their employment with me by the end of the week. Both Lance Huffy and Terry England decided to quit the Union, so that they could continue to work for Waterworks, and both of them quit the Union as of June 1, 2006.

(Def. Br. Ex. 1 at ¶ 9.)

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

There is clearly an issue of material fact with respect to what actually took place at the fall 2004 meeting and whether a contract was formed at that time or as a result of defendant's subsequent conduct. Karner's affidavit does not assert that the parties agreed to enter into the CBA at the fall 2004 meeting; instead plaintiffs argue that defendant's subsequent conduct is what manifested an intent to be bound by the CBA. *See Bricklayers Local 21 of Ill. Apprenticeship and Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 765 (7th Cir. 2004) (quoting

5

*Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7 th Cir. 1985)) (alterations omitted) ("[A] collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound, rather all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement."). However, the same conduct that plaintiffs believe binds defendant to the CBA is consistent with Roger Garbacz's account of events. While Waterworks used pre-printed Contribution Reports which referenced the CBA and paid dues consistent with the amounts that would have been due under the CBA, its representative refused to sign the "Warranty and Acceptance" clause. Moreover, defendant insists that Karner told Roger Garbacz that making these payments would not bind them to the CBA.[1] Accordingly, there is a genuine issue of material fact concerning what agreement, if any, was reached in the fall 2004 meeting and whether this is consistent with Waterworks' subsequent conduct.

---

[1] In their reply brief, plaintiffs raise a new argument concerning Karner's authority to enter into an agreement on behalf of the Union. This is improper. *See, e.g*, *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived."); *DiChristofano v. Neiman Marcus Group, Inc.*, No. 07 C 2250, 2007 WL 3231424, at *5 (N.D. Ill. Oct. 30, 2007) (Kendall, J.) (same). Even if this argument had been properly raised, Roger Garbacz's affidavit raises a question of fact concerning Karner's apparent authority. *See Lindora Medical Clinic, Inc. v. Care Charge, Inc.*, No. 92 C 4148, 1993 WL 335809, at *3 (N.D. Ill. Aug. 26, 1993) (examining apparent agency principles under Illinois law).

Plaintiffs argue that I am compelled to infer that defendant's conduct manifested an intent to be bound by the CBA as a result of the Labor Management Relations Act, 29 U.S.C. 186(c)(5)(B) ("LMRA"). The LMRA makes it a criminal offense for employers to make payments to a union or employee representative in the absence of a written agreement.[2] This argument is a red herring, however. Although plaintiffs are correct that the LMRA would render defendant's purported oral agreement illegal, defendant is not seeking to enforce that agreement but to dispute that its conduct manifested an intent to be bound by the CBA. Waterworks' defense that its conduct was the result of a different agreement – whether legal or not – presents a factual question which cannot be resolved on this record.[3] Accordingly, summary judgment is inappropriate.

---

[2] Section 186(d)(1) makes it a crime for an employer to pay union membership dues to a labor organization "willfully and with the intent to benefit himself or other persons." *See United States v. Papia*, 910 F.2d 1357, 1363 (7th Cir. 1990).

[3] Although plaintiffs cite *Dugan v. R.J. Corman Railroad Co.*, 344 F.3d 662, 668 (7th Cir. 2003) in support of their argument, I find the case distinguishable. *Dugan* involved an employer that admitted to previously being a signatory to an expired CBA. An expired CBA qualifies as a "written agreement" under the LMRA. *See, e.g., Bricklayers Local 21*, 385 F.3d at 770. Therefore, the *Dugan* court's dictum suggesting that certain ERISA provisions and the LMRA "might seem to compel an inference that [the employer's] contributions were made pursuant to a subsisting, effective agreement, which could only have been the collective bargaining agreement, tacitly extended" was made is a different context. Moreover, the *Dugan* court went on to examine the voluntariness of the conduct in question and whether this constituted "an acknowledgment of a contractual obligation." 344 F.3d at 669. Whether defendant's conduct was an acknowledgment of the same contractual obligation as alleged by plaintiffs is the very issue in this case.

IV.

For the foregoing reasons, the parties' cross-motions for summary judgment are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: December 20, 2007